

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 16, 1961

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Opinion No. WW-1019

Re: Whether the Comptroller is
precluded by Art. 10.14(3),
V.C.S., from refunding the
tax paid on special fuels
connecting to and feeding
the carburetor of a motor
vehicle when the flow line
connecting said tank and
carburetor is temporarily
cut off by valve pending
use of such special fuels
to operate stationary
Dear Mr. Calvert:                    pumping units.

        You have asked this department for an opinion on the ques-
tion hereinafter set forth and have given us a stated set of facts in
connection therewith which are as follows:

        "The Western Oil Transportation Company,
    Inc., Midland, Texas, operates fifty or more
    truck tractors hauling crude oil and other
    petroleum liquids in cargo tanks mounted on
    semi-trailers, which trucks are equipped with
    motor-powered units used to pump the oil into
    and from the cargo tanks.  The pumping units
    are propelled by the same motor which propels
    the trucks in daily travel over the public
    roads and highways in going to and from
    storages and oil well locations or other out-
    lets.

        "Each truck is equipped with two separate
    fuel tanks both of which are connected to and
    feed the carburetor which supplies special
    fuels to the truck's motor which generates
    power for the propulsion of the truck on the
    highway and also the power which operates the
    pumping units to load and unload the cargo
    tanks.  The pumping units do not operate while
    the truck is moving over the highway.  Each of

the two fuel supply tanks is equipped with a
cutoff valve, and the claimant states that the
fuel from one tank is used to propel the vehicle
over the highway and fuel from the other tank
is used to operate the motor-powered pumping
unit.

"This company is classified by Article
10.11-(1) as a non-bonded user who is required
to pay the tax to the supplier on all special
fuels purchased."

Your question is as follows:

"1.   Is the Comptroller precluded by
Article 10.14(3), above quoted, from re-
funding the tax paid on special fuels
delivered by a licensed user into a separate
fuel tank connected to and feeding the car-
buretor of a motor vehicle when the flow
line connecting said tank and carburetor is
temporarily cut off by valve pending use of
such special fuels to operate stationary
pumping units?"

Chapter 10, Title 122A, V.C.S., provides for the tax on
special fuels.

Article 10.14, Chapter 10, Title 122A, V.C.S., provides
for refunds and Sections 1, 2 and 3 of such Article 10.14 read as
follows:

"(1) Except as otherwise provided by
Article 10.15 of this Chapter, any licensed
dealer who shall have paid the tax imposed
by this Chapter upon any liquefied gas or
distillate fuel which has been used or sold
for use by such dealer for any purpose other
than propelling a motor vehicle upon the
public highways of this State, or which has
been sold to the United States Government for
the exclusive use of said government, and any
licensed user who shall have paid said tax
upon any liquefied gas or distillate fuel
which has been used by such user for any pur-
pose other than propelling a motor vehicle
upon said public highways, may file claim
*for a refund of the tax or taxes so paid,*

less one percent (1%) allowed suppliers for the expense of collecting and reporting such taxes to this State. Such claims shall be filed with the Comptroller on forms prescribed by the Comptroller and shall show the date of filing and the period covered in the claim, the gallons of liquefied gas and the gallons of distillate fuel sold or used for purposes subject to tax refund, and shall show such other facts and information as the Comptroller may by rule and regulation require. Every such claim shall be supported by an invoice or invoices issued by the claimant, as hereinafter provided, and shall be verified by affidavit of the claimant and filed in the office of the Comptroller within six (6) months from the date the special fuels were invoiced or required to be invoiced for sale or use, and no claim shall be made by the claimant or approved by the Comptroller when the sale of such special fuels or the appropriation for use occurs more than six (6) months prior to the date the claim is filed.

"(2) When liquefied gas or distillate fuel is sold by a dealer or is appropriated for use by a user for any purposes for which a refund of the tax paid on said products may be claimed as provided herein, such dealer or user shall, at the time of each sale or appropriation for use and not thereafter, make out a serially numbered invoice in not less than duplicate counterparts with the name and address of the dealer or user printed thereon which shall show the date of the sale or appropriation for use, the quantities of liquefied gas and/or distillate fuel sold or appropriated for use, the purposes for which said products will be used, as declared by the purchaser or user, and such other information as the Comptroller may require. The invoice shall be signed by the recipient of any such special fuels purchased from a dealer. One counterpart of each invoice shall be kept by the dealer or user for a period of two (2) years open to the inspection of the Comptroller or his authorized representatives, and the other counterpart shall be filed as a part of the claim for tax refund as above provided.

"(3) Any dealer or user who shall file claim for refund of the tax on any special fuel which has been delivered into the fuel supply tank of a motor vehicle, or who shall file any invoice in a claim for tax refund upon which any date, figure, signature, or other material information is false or incorrect, shall forfeit his right to the entire amount of the refund claim filed."

Attorney General's Opinion No. O-2381, written by this department under date of July 25, 1940, covers several questions in connection with refunds of taxes on motor fuels. Some of the situations covered in this opinion are as follows:

"1. Oil field equipment is used which is a licensed or registered motor vehicle (truck). On this truck is mounted a drilling rig. The truck motor is used for two purposes: (a) propelling the vehicle from place to place, which may be on public roads or highways, private property, such as leases, or both; (b) operating the equipment mounted on the truck strictly as a stationary engine. This is accomplished through a power take-off which separates the motor from the truck while so used.

"2. This same procedure is used in connection with the following classes of work; namely, post-hole drilling for power lines, pumping oil into tank built on the same truck, feed-grinding mills, oil well cementing, oil well treating, fire engines for pumping water on fire after arrival."

". . . .

"The following situation has never arisen; however, the facts are true, and as such must be given consideration. A farmer or rancher uses a registered truck; thereon he would have two fuel tanks and keep the fuel used for traveling on the roads or highways separate from that used while driving the same truck on his private

> property.  This would require a switch
> from one fuel tank to the other at the
> proper time; and, furthermore, such trucks
> would not have a power take-off arrangement."

Opinion No. 0-2381 held that in these situations the refund should be allowed if the fuel was shown to have been used for operating and propelling the registered truck in question upon private property and not upon and along highways of this State.  As indicated in the above opinion and the courts generally, where there is an ambiguity the question should be decided in favor of the taxpayer.

Section 1 of Article 10.14 clearly provides for the refund of taxes paid on fuel which has been used or sold for use for any purpose other than propelling a motor vehicle upon the public highways of this State or which has been sold to the United States Government for the exclusive use of said government.

Section 3 of Article 10.14 reads, in part, as follows:

> "Any dealer or user who shall file
> claim for refund of the tax on any
> special fuel which has been delivered
> into the fuel supply tank of a motor
> vehicle. . .shall forfeit his right to
> the entire amount of the refund claim
> filed."

It seems that there is some conflict between the wording of Section 1 and that of Section 3 above mentioned. However, the statutes throughout show the intention of the Legislature to levy a tax on motor fuels and special fuels used or sold for the purpose of propelling motor vehicles over the highways; only on that part of the fuel used for propelling such motor vehicles on the highways of this State. It is the further intent of the Legislature to refund the tax on fuels used for purposes other than that of propelling motor vehicles over the highways of this State, if it can be determined what amount of the fuel was used for the different purposes.

It is our opinion that Section 3 has reference to fuels delivered into the fuel supply tank of a motor vehicle which travels part time on the highways and part time on private property with no way of determining the amount of fuel used on private property and the amount used on the highways.

However, in the fact situation given by you the refund is authorized because in this specific situation the fuel is not delivered into the fuel tank which supplies fuel to the motor while traveling on the public highways. The fuel on which the refund is asked is delivered into a separate tank which is used only for operating the motor at a time when it is not propelling the vehicles over the public highways but is being used to propel a power take-off shaft to operate a stationary pump for loading or unloading the cargo of the truck.

To demonstrate this more clearly -- if this were a separate motor mounted on the rear-end of this truck so that it could not be used for propelling the truck and the fuel was supplied from a separate tank as in this case clearly in our opinion the refund should be allowed for the fuel used in this separate motor.

In the instant case the fuel is used out of one tank to supply the motor while it is being propelled over the public roads. Then the truck is parked on private property and the motor is disengaged from the gears which propel the truck, and is engaged in another gear which propels the power take-off shaft to the stationary pump, and the fuel is supplied from a different tank than that used to propel the motor vehicle over the roads. In effect, it becomes a completely separate unit from the motor vehicle which is used on the public roads.

Based on the facts which you have submitted, it is the opinion of this department that the special fuel used to operate this motor for the use of loading or unloading the cargo of the truck, which fuel is being supplied from a tank which is used only while the truck is standing still and not being used on the public roads, is not subject to tax or the tax is subject to be refunded and Article 10.14(3), V.C.S., does not preclude you from refunding the tax paid on such special fuels. The Special Fuels Tax Act authorizes you to require such affidavits or other information which you deem necessary to establish that the facts in this situation are as have been stated.

## S U M M A R Y

The Comptroller is not precluded by Article 10.14(3), V.C.S., from refunding the tax paid on special fuels delivered by a licensed user into a separate fuel tank connected to and feeding the carburetor of

a motor vehicle when the flow line connecting
said tank and carburetor is temporarily cut off
by a valve pending use of such special fuels
to operate stationary pumping units.

Yours very truly,

WILL WILSON
Attorney General of Texas

By J. H. Broadhurst
J. H. Broadhurst
Assistant Attorney General

JHB:jp

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

J. Arthur Sandlin
W. E. Allen
Elmer McVey
W. Ray Scruggs

REVIEWED FOR THE ATTORNEY GENERAL
By:  Morgan Nesbitt